Spriesch Tool and Mfg. Co., Inc. v. Commissioner.
Spriesch Tool & Mfg. Co. v. Commissioner
Docket Nos. 19787, 20532.
United States Tax Court
1950 Tax Ct. Memo LEXIS 129; 9 T.C.M. (CCH) 669; T.C.M. (RIA) 50191; August 10, 1950
*129 1. Petitioner in the taxable years 1942 to 1945, inclusive, was a manufacturer of tools and dies, aircraft armament, antiaircraft machine gun mounts and did other general machine work. It had a large volume of sales and substantial profits in each of the taxable years, except 1945. It had three officers who not only looked after problems of production and management but did all the engineering, designing and selling as well. The Commissioner in his determination of the deficiencies determined that the amounts which petitioner deducted for compensation incurred and paid to its three officers exceeded that which was reasonable and on that ground disallowed a substantial part of the deductions claimed by the taxpayer as salaries paid to these three officers. Held, the Commissioner erred in part in the deductions which he disallowed, and reasonable compensation for each of these three officers to be allowed as deductions is determined from the evidence. 2. In each of the taxable years petitioner rented under leases from its president and majority stockholder a four-story brick building with stone trimming, with 16,000 square feet of floor space, and in excellent condition. The rent *130 was paid pursuant to the terms of the lease and deduction therefor was claimed on the tax returns filed by petitioner. There is evidence in the record that the rents paid were reasonable when compared to rents paid for other similar property in the City of Buffalo. In determining the deficiencies the respondent concluded that only a portion of the amount so paid was reasonable and disallowed the deductions claimed in so far as they exceeded the amounts determined by him as reasonable. Held, that the entire rents paid on this property in each of the taxable years is deductible. 3. In prior years and during the taxable years here involved, petitioner depreciated its machinery and equipment on the straightline basis. In 1942 and 1943, petitioner was engaged in the production of articles for the armed forces and found it necessary to operate on three shifts of eight hours each. On the basis of this factor, petitioner in its 1942 and 1943 return deducted various amounts representing abnormal or accelerated depreciation. Held, that where the taxpayer employs the straight-line method of depreciation, evidence of increased usage and other unusual operating conditions do not, in the absence *131 of a showing that such factors actually resulted in a shortening of the remaining useful life of the depreciable assets, warrant an allowance for abnormal or accelerated depreciation. Copifyer Lithograph Corporation, 12 T.C. 728, followed. Frank G. Raichle, Esq., for the petitioner. Thomas R. Charshee, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion These proceedings have been consolidated. The petitioner requests a redetermination of deficiencies, as follows: Tax
Year
Amount
Income
1942
$ 48.33
Excess profits
1942
31,233.93
Excess profits
1943
32,651.97
Income
1944
4,738.19
Excess profits
1944
20,261.75
Income
1945
3,815.32
Excess profits
1945
12,501.05
Certain of the adjustments made in the notices of deficiency *132 are not contested by petitioner. The pleadings raise the following questions for our determination: 1. Were the amounts of $32,740, $26,740, $26,740 and $26,740 paid as officers' salaries in the years 1942, 1943, 1944 and 1945, respectively, properly disallowed by the Commissioner for the reason that they were excessive? 2. Were the amounts of $2,000, $2,600, $2,600 and $2,600 paid as rents on a building owned by petitioner's president and principal stockholder in the years 1942, 1943, 1944 and 1945, respectively, properly disallowed by the Commissioner for the reason that they were excessive? 3. Were the amounts of $4,973.31 and $9,796.48 claimed as deductions for accelerated depreciation in the years 1942 and 1943, respectively, properly disallowed by the Commissioner for the reason that they were excessive? Findings of Fact Petitioner is a New York corporation with its principal office and place of business located in the City of Buffalo, New York. Petitioner was organized in the year 1935 to acquire the assets of a defunct predecessor. The corporation income and declared value excess profits tax and corporation excess profits tax returns for the years 1942, 1943, *133 1944 and 1945, were filed with the Collector of Internal Revenue for the 28th District of New York. During the years here involved petitioner was a manufacturer of tools and dies, aircraft armament, antiaircraft machine gun mounts and performed general machine work. Joseph Cheney became the president of the petitioner, Joseph Spriesch, the vicepresident, and William Cheney, the secretary, and these men, with the exception of a short interval during which William Cheney was away from the company, have functioned as executive officers of the company down to date. The salaries of these men for each of the years in question were fixed by the directors of the company without regard to their stockholding interests. During the years 1942 and 1943, petitioner was operating on three shifts, seven days a week, around the clock. Throughout the years 1944 and 1945, the company operated on two shifts. During each of these years all three of petitioner's executives named in the paragraph above devoted all of their working hours to the business of the company and took no vacations. They worked every day, including Sunday, except that Joseph Cheney and William Cheney alternated in taking Sundays *134 off. Due to the knowledge, experience and efficiency of petitioner's executive officers, the company was not obliged to hire any outside engineering or expert accounting services, nor was it obliged to retain an employment manager, credit manager or advertising agency. Petitioner produced much aircraft armament, bomb shackles, bomb racks, bomb releasing mechanisms and other production items for the United States Government. Petitioner also did experimental and development work for the armed services. In connection with its war work, petitioner's facilities were greatly expanded without the aid of outside engineering assistance. Both the design and production engineering were handled by the company's executives without the aid of outside engineers. During the year 1945, petitioner's executives handled all termination and renegotiation matters without the aid of outside accountants or lawyers. Two-thirds of the preferred stock and one-half of the common stock of petitioner were owned by Joseph J. Cheney, and one-third of the preferred stock and one-half of the common stock were owned by Joseph Spriesch during the years involved herein. No dividends, as such, were paid to its stockholders *135 by petitioner in 1942, 1944 or 1945. In 1943, petitioner paid dividends, as such, in the approximate amount of $12,000. During the years from 1930 to 1940, petitioner's peak employment was 16 people and during the war years a peak of 200 employees was reached. Petitioner's corporation income and declared value excess-profits tax return for 1942 shows gross sales for 1942 of $1,014,560.07. Schedule F of this return shows compensation of officers claimed as deductions, as follows: Joseph Cheney, Pres.-Treas.
$29,500.00
Joseph Spriesch, Vice-Pres.
14,000.00
William Cheney, Secretary
13,000.00
Total
$56,500.00 The Commissioner in his deficiency notice disallowed $32,740 of the foregoing deduction without specifying how much of each salary was disallowed. The net income shown on petitioner's return for 1942 was $100,512.32. Petitioner's corporation income and declared value excess-profits tax return for 1943 shows gross sales for 1943 of $703,209.19. Schedule F of this return shows compensation of officers claimed as deductions, as follows: Joseph Cheney, Pres. & Treas.
$27,500.00
Joseph Spriesch, Vice-Pres.
12,000.00
William Cheney, Secretary
11,000.00
Total
$50,500.00
*136 The Commissioner in his deficiency notice disallowed $26,740 of the foregoing salary deductions without specifying how much of each salary was disallowed. The net income shown on petitioner's return for 1943 was $104,873.80. Petitioner's corporation income and declared value excess-profits tax return for 1944 shows gross sales for 1944 of $532,991.41. The salary deductions of compensation to officers are the same as shown above for 1943. The Commissioner in his determination of the deficiency disallowed $26,740 of the salary deductions without specifying how much of each salary was disallowed. The net income shown on petitioner's return for 1944 was $47,161. Petitioner's corporation income and declared value excess-profits tax return for 1945 shows gross sales for 1945 of $284,790.48. The salary deductions of compensation to officers are the same as shown above for 1943 and 1944. The Commissioner in his determination of the deficiency disallowed $26,740 of the salary deductions without specifying how much of each salary was disallowed. The net income shown on petitioner's return for 1945 was $3,781.36. A reasonable allowance for salaries or other compensation for personal services *137 actually rendered in the case of the officers of petitioner here in question for the respective taxable years, is as follows: 1942
Joseph Cheney
$25,000
Joseph Spriesch
12,000
William Cheney
12,000
Total
$49,000
1943
Joseph Cheney
$22,500
Joseph Spriesch
10,000
William Cheney
10,000
Total
$42,500
1944
Joseph Cheney
$20,000
Joseph Spriesch
9,000
William Cheney
9,000
Total
$38,000
1945
Joseph Cheney
$20,000
Joseph Spriesch
9,000
William Cheney
9,000
Total
$38,000
Rents In 1939, Joseph Cheney purchased a brick building, stone trimmed, with a concrete floor on Howard Street, Buffalo, New York, for which he paid $12,500. The building consisted of four floors with 16,000 square feet of floor space. During 1942, 1943, 1944 and 1945, Cheney rented this building to petitioner under a lease. In its tax returns for 1942, 1943, 1944 and 1945, petitioner claimed as deductions rent paid to Cheney in the amounts of $8,400 for 1942 and $9,000 for each of the years 1943, 1944 and 1945. Respondent in his notices of deficiency allowed rent paid to Cheney in the amount of $6,400 for each year and disallowed the amounts of $2,000 for 1942 *138 and $2,600 for each year 1943 to 1945, inclusive, as excessive. Depreciation In its tax returns for 1942 and 1943, petitioner claimed as deductions for depreciation, in part, the following: 1942
1943
Machinery and equipment
$14,457.51
$22,024.35
Automobiles and truck
665.24
Total
$14,457.51
$22,689.59
In the notice of deficiency respondent disallowed depreciation, as excessive as follows: 1942
1943
Machinery and equipment
$ 4,973.31
$ 9,131.24
Automobile
665.24
Total
$ 4,973.31
$ 9,796.48
Opinion BLACK, Judge: We shall take up and decide the issues in the order in which we have stated them in our preliminary statement. 1. Reasonableness of salaries paid to petitioner's three officers. Respondent cites several cases in his brief in support of the proposition that the determination of the Commissioner in a case of this kind is prima facie correct and the petitioner is put to proof of the reasonableness of the amounts in dispute. Among the cases which he cites on that point are. ; ; *139 ; and . These cases do hold, as respondent says they do, that in a case of this kind the determination of the Commissioner is presumptively correct. However, the instant case is not one which calls for a reliance on the doctrine of the presumptive correctness of the Commissioner's determination. Cf. We have in the instant case a good deal of evidence bearing upon the reasonableness of the salaries involved in these proceedings. It is true that this evidence, outside of the evidence as to the gross sales and net profits of the corporation in the respective taxable years, comes from Joseph Cheney, president of petitioner, and William Cheney, treasurer of petitioner. However, this evidence is before us and we must consider it, even though it is from interested parties, and we have done so, bearing in mind, of course, that it is from interested parties. In determining in any given case whether the particular salary is reasonable the situation must be considered as a whole. Ordinarily no single factor is decisive. There are various tests which have been commonly *140 applied in determining the reasonableness of the particular salary or compensation, such as, the ratio of the particular salary and the aggregate salaries to gross income, the size of the particular business, the extent and scope of the employee's work, the employee's qualifications and contribution to the business venture, amount of salaries paid to the particular employee in prior years, general economic conditions, and prevailing salaries paid to employees peforming similar services in a comparable enterprise. See Mertens Law of Federal Income Taxation, Vol. 4, section 25.51. We have considered the foregoing factors in so far as covered by the evidence in the record in arriving at our conclusion of what we regard as reasonable salaries for each of petitioner's officers in each of the taxable years and these conclusions have been embodied in our findings of fact. Not all of the above-mentioned factors are represented in the evidence which is before us. Indeed, it is rare when we have all of such factors represented by the evidence in any given case. However, we have most carefully considered all the evidence which is before us and have reached the conclusions as to these salaries *141 which are embodied in our findings of fact. We feel that the allowances fixed by the Commissioner in his deficiency notices are too low, as snown by the evidence in this case. For example, as we have shown in our findings of fact, petitioner in its corporation income and declared value excess-profits tax return for 1942 claimed aggregate salary deductions for its three officers of $56,500. Of this amount the Commissioner disallowed $32,740, thus allowing only $23,760 of the amount, as we figure it, which petitioner paid its three officers in that year. This, it seems to us, is entirely too low when it is considered that petitioner's gross sales for that year were $1,014,560.07 and its net income was $100,512.32. There is one thing to which we think we should call attention in our discussion of this question as to what allowances should be made to petitioner in each of the taxable years for reasonable salaries paid to its three officers and it is this, respondent in his suggested findings of fact contained in his brief has asked us to make the following finding of fact: During the taxable years involved herein, the aforesaid officers received compensation from petitioner, as follows: *142 1942
1943
1944
1945
Joseph Cheney, Pres.
$35,740
$33,740
$33,740
$33,740
Joseph Spriesch, V.P.
14,000
12,000
12,000
12,000
Wm. Cheney, Sec'y.
13,000
11,000
11,000
11,000
Totals
$62,740
$56,740
$56,740
$56,740 The opening statement made by petitioner's counsel at the hearing enumerated somewhat the same figures. However, it is well understood, of course, that opening statements of counsel at the hearings are not evidence. The corporation income and declared value excess-profits tax returns for each of the taxable years here involved are in evidence and we have carefully examined them and the figures given in our findings of fact are the deductions which petitioner actually took as salaries paid these three officers in determining its net income for each of the taxable years. It is the deductions actually taken which are controlling. In a recomputation under Rule 50 the salaries which we have found in our findings of fact under the evidence to be reasonable should be used as deductions, instead of those which were actually deducted by petitioner on its returns. 2. Rents. The facts show that petitioner rented from its president and *143 stockholder, Joseph Cheney, a four-story brick building with stone trimming and containing 16,000 square feet of floor space. A photograph and description of this building is in evidence and the building appears to be in excellent condition. Petitioner paid to Cheney as rental for this building, under a lease contract, the following amounts: $8,400 for 1942, and $9,000 for each of the years 1943, 1944 and 1945, and took these amounts as deductions for rent paid in its income tax returns for the respective taxable years. The evidence shows that Cheney purchased this building from the New York Telephone Company in 1939 at what appears to have been a very advantageous price of $12,500. If the original price of this property to Cheney were the only criterion as to whether petitioner was paying Cheney as rental for the property a reasonable amount, then, of course, it would seem that the rentals paid in each of the taxable years were unreasonably high. However, in determining whether petitioner's agreement to pay Cheney the rentals here involved was arrived at in an arm's length transaction, an important factor is as to what other comparable property in the City of Buffalo was renting for *144 during the taxable years in question. An expert witness, J. Howard Smith, who is connected with a Buffalo real estate firm and who specializes in the renting of commercial and industrial property, testified that he was familiar with the property in question and knew of other buildings of similar character which were being rented to tenants. He testified that the rents which petitioner paid to Cheney were, in his opinion, fair and reasonable. Respondent introduced no evidence on this issue and relies upon the presumption which attaches to his determination. In this state of the evidence, we think that the instant case falls within the ambit of , rather than in the ambit of , affirmed , upon which respondent strongly relies. On this issue respondent is reversed. 3. Depreciation. In its tax returns for 1942 and 1943, petitioner claimed as deductions for depreciation, in part, the following: 1942
1943
Machinery and equipment
$14,457.51
$22,024.35
Automobiles and truck
665.24
Totals
$14,457.51
$22,689.59
In the notice of deficiency respondent *145 disallowed depreciation as excessive, as follows: 1942
1943
Machinery and equipment
$ 4,973.31
$ 9,131.24
Automobile
665.24
Totals
$ 4,973.31
$ 9,796.48
In support of the reasonableness of its claimed deductions for depreciation on its machinery and equipment for the years 1942 and 1943, petitioner placed in evidence a schedule of depreciation rates which it claims on numerous items. This schedule shows that the depreciation has been accelerated over the prior year of 1941 from approximately 10 per cent to 100 per cent. In this schedule the total amounts of depreciation claimed at the accelerated rates were $12,418.55 in 1942 and $15,223.13 in 1943. The petitioner operated three shifts in 1942 and 1943. Section 29.23(1)-5 of Regulations 111 reads as follows: "Sec. 29.23(1)-5. Method of Computing Depreciation Allowance. - The capital sum to be recovered shall be charged off over the useful life of the property, either in equal annual installments, or in accordance with any other recognized trade practice, such as an apportionment of the capital sum over units of production. Whatever plan or method of apportionment is adopted must be reasonable and *146 must have due regard to operating conditions during the taxable period. The reasonableness of any claim for depreciation shall be determined upon the conditions known to exist at the end of the period for which the return is made. If the cost or other basis of the property has been recovered through depreciation or other allowances no further deduction for depreciation shall be allowed. The deduction for depreciation in respect of any depreciable property for any taxable year shall be limited to such ratable amount as may reasonably be considered necessary to recover during the remaining useful life of the property the unrecovered cost or other basis. The burden of proof will rest upon the taxpayer to sustain the deduction claimed. Therefore, taxpayers must furnish full and complete information with respect to the cost or other basis of the assets in respect of which depreciation is claimed, their age, condition, and remaining useful, life, the portion of their cost or other basis which has been recovered through depreciation allowances for prior taxable years, and such other information as the Commissioner may require in substantiation of the deduction claimed." Under the statute *147 and the foregoing regulations, in order to sustain its burden of proof, petitioner must show: (1) the cost or other basis of assets for which depreciation is claimed, (2) the age, condition and remaining useful life of the assets, (3) the portion of the cost or other basis which has been recovered through depreciation allowances for prior taxable years, and (4) such other information as may be required to establish the correctness of the deductions claimed. In , we stated the taxpayer's contention to be: "Petitioner contends in this proceeding that it is entitled to the increased deductions claimed in its tax returns for 1942 and 1943 to compensate for abnormal depreciation suffered by various items of its printing equipment in producing maps and other printed material for the armed forces during those years. The deficiencies herein result from the respondent's refusal to allow any additional depreciation for either year." After stating the issue, we then ruled against the taxpayer in that case upon the evidence which we have before us. In so ruling we said: "* * * In our opinion, petitioner has wholly failed to present *148 satisfactory evidence that the useful life of its printing equipment was so reduced by usage in 1942 and 1943 as to warrant the substitution of accelerated rates in lieu of the normal rates it had previously used in computing depreciation." We are unable to see where the evidence in the instant case is any stronger for petitioner than it was for the taxpayer in the Copifyer Lithograph Corporation case [. For reasons above stated, we sustain the Commissioner on this issue of depreciation. Decisions will be entered under Rule 50.